**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

In re:                                     )
                                           )
**Clifton D. & Mary A. Randall,**          )          **Case No. 20-12418-JDL**
                                           )              **(ch. 12)**
                        **Debtors.**       )

**DEBTORS' CHAPTER 12 PLAN, NOTICE OF HEARING**
**AND NOTICE OF OPPORTUNITY FOR HEARING**

COME NOW Clifton D. and Mary A. Randall ("Debtors") and propose the following as

their Chapter 12 plan:

**CLASSIFICATION OF CLAIMS**

A.      **SECURED CLAIMS**

**Class 1. Personal Property**

**BancFirst** (secured creditor)

A.      Miscellaneous vehicles, tractors and equipment detailed in attached Exhibit A.

Security:

First Security Interest in all vehicles, tractors and equipment listed on Exhibit A.

Secured Claim:                              $68,000.00

Date of Note:  September 10, 2014.

Interest Rate: 2.5%

Amortization: Twenty-four years remaining.

Frequency of Payment: Annual

Date of Payment:  December 1, 2021.

Amount of Payment: $3,814.20.

1

**Class 2.  Real Property**

**BancFirst** (secured creditor)

A. House, Barn, Pasture and Crop Land (NW/4, Section 7, Township 3 North, Range 13 West, Cotton County, Oklahoma).

Security: First Mortgage on the following: NW/4, Section 7, Township 3 North, Range 13 West, Cotton County, Oklahoma-consists of Debtor's residence and outbuildings valued at $45,000.00,  160 acres mol crop and pasture land valued at $112,000.00 ($700.00 per acre).

Secured Claim:                                                  $157,000.00

Date of Note:  September 10, 2014.

Interest Rate: 2.5%

Amortization: Twenty-four years remaining.

Frequency of Payment: Annual

Date of Payment:  December 1, 2021.

Amount of Payment: $8,806.35

**BancFirst** (secured creditor)

B.  Crop and pasture land, (N1/2 SE1/4, Section 12, Township 3 North, Range 13 West, Cotton County, Oklahoma;  SW1/4, Section 6,  Township 3 North, Range 13 West, Cotton County, Oklahoma).

Security:  First Mortgage on the following:  N1/2 SE1/4, Section 12, Township 3 North, Range 13 West, Cotton County, Oklahoma and SW1/4, Section 6,  Township 3 North, Range 13 West, Cotton County, Oklahoma-consists of 242 acres valued at $169,400.00 ($700.00 per acre).

Secured Claim:                                                  $169,400.00

Date of Note:  September 10, 2014.

Interest Rate: 2.5%

Amortization: Twenty-four years remaining.

Frequency of Payment: Annual

Date of Payment: December 1, 2021.

Amount of Payment: $9,507.45

**B.    PRIORITY CLAIMS:**

**<u>Attorney Fees incurred before confirmation.</u>** Attorney fees in the amount of $16,750.00 and expenses in the amount of $300.00 are expected to be incurred by Debtors through confirmation of the Plan. Attorney fees incurred prior to confirmation shall be paid by Debtors subject to approval by the Court. Debtors' counsel is holding $6,000.00 as a retainer, such amount being on deposit in his client trust account.

**<u>Attorney Fees incurred after confirmation of the Plan.</u>** After confirmation, it is expected that attorney fees of $1,500.00 per year will be incurred by Debtors through the continuation of their Plan on miscellaneous matters that may arise. Prior court approval of all fees is required except that Debtors may pay attorney up to $1,500.00 per Plan year, without prior court approval, through the Standing Chapter 12 Trustee. This ongoing annual payment is first due on the date that is one year after the Effective Date of this Plan and then annually thereafter for two years; and is for services actually rendered. Attorney shall send Trustee and Debtor billing statements justifying the fee at least thirty days before the due date. In the event any party disputes the ongoing annual payment the Court will determine the award pursuant to Title 11 U.S.C. §330. All attorney fees, whether incurred before or after confirmation, shall have priority pursuant to Title 11 U.S.C. §507 but shall not be credited toward payment of liquidation value to unsecured creditors under Title 11 U.S.C. §1225(A)(4).

**Trustee Fees** .  The Standing Chapter 12 Trustee shall receive an administrative fee upon all payments disbursed by the Trustee. The fee shall be assessed upon those payments at the percentage set by the Attorney General, pursuant to 28 U.S.C. §586(e), which is effective on the date of the payment. The fee shall be paid by the Debtors in addition to payments to secured creditors and payments of liquidation value to unsecured creditors.

**Other Administrative Operating Expenses.**   Claims for operating and living expenses incurred in the ordinary course of the Debtors' business since the commencement of this bankruptcy proceeding shall be paid by Debtors in the ordinary course of business on such terms as have been agreed upon by Debtors and such creditors. Such claimants need not file any claim or application with the Court to receive payment of its claim.

## C. Abandonment

The Debtors have or will abandon to BancFirst the following:

Parts of sections six, seven and thirty-six, Cotton County, Oklahoma, consisting of 400 acres, more or less; all cattle, consisting of thirty one head of beef calves, thirty six head of cows and five bulls, more or less; and all vehicles, machinery, implements previously pledged to BancFirst and not listed on Exhibit A.

## D.  UNSECURED CLAIMS

On the first, second and third anniversaries of the Effective date of the Plan, Debtors shall pay to the Trustee their actual disposable income computed pursuant to Title 11 U.S.C. §1225(b)(1).  If the Plan has not terminated prior to payment of projected disposable income for the final year of the Plan, the payment shall be made within fifteen (15) days from the date of termination of the Plan. Except as allowed pursuant to Title 11 U.S.C. §1228(b), Debtors shall not receive a discharge until the final payment of projected disposable income has been made to the Trustee. Disposable income

shall be distributed first to Allowed Claims entitled to priority under Title 11 U.S.C. 507. Only claims which have been filed and allowed pursuant to Title 11 U.S.C. §502, shall be entitled to distribution of disposable income. As illustrated below under "Liquidation Analysis", the distribution to holders of allowed unsecured claims will satisfy the "best interest of creditors" requirement of Title 11 U.S.C. §1225(a)(4).

**E.  STATEMENT OF NON-FARM INCOME**

The Debtors gross non-farm income for 2019, the year preceding the filing of this bankruptcy, was $48,106.00 which was comprised of the income received by Mrs. Randall from her contract employment with the U.S. Postal Service and the social security benefit amount of $1,294.00 per month (net after medicare deductions) received by Mr. Randall. His gross 2019 total social security income was $16,996.00.

**F.  CASH FLOW PROJECTIONS**

The Debtors farm wheat and previously raised cattle. They have sought authority from this Court to surrender all cattle owned by them to BancFirst, the creditor holding a first security interest in such cattle. While Debtors intend to surrender all real estate owned by them with the exception of the property described in Class Two above, they intend to continue renting approximately 553 acres from third party land owners on which to farm wheat. The projected cash flow and budget attached hereto as Exhibit B provides only for wheat farming for Debtors' near term future and includes income they expect to generate from farming the 322 acres of crop land they wish to retain under this plan and their conduct of farming operations on the 553 acres of crop land rented from the above referenced third party land owners.

**G.  LIQUIDATION ANALYSIS**

The Debtors own no unencumbered, non-exempt real or personal property.

**H. PAYMENT SUMMARY**

The payments listed on the schedule annexed as Exhibit C shall be distributed through the Standing

Chapter 12 Trustee.

**I. TAX CONSEQUENCES**

No tax consequences are anticipated which will adversely affect feasibility of the Plan.

**J. ASSETS**

Machinery and Equipment (including autos) $290,600.00.

Other personality and household goods $9,250.00.

Real Estate $740,500.00.

Cattle $64,140.00.

Wheat – Cash Collateral $60,000.00 crop insurance proceeds.

**K. LIABILITIES**

Secured Claims $1,042.605.00.

Unsecured Claims $111,516.00.

**L. EFFECTIVE DATE OF THE PLAN**

The Effective date of the Plan shall be the first business day after the order confirming this

Plan has become final and non-appealable.

**M. TERM OF THE PLAN**

The term of the Plan is three (3) years from Effective date of the Plan.

**N. MISCELLANEOUS PROVISIONS**

1. <u>Vesting of Property Free and Clear of Liens</u>. Except as otherwise provided in this Plan and

in Title 11 U.S.C., §1228(a), all property of the estate vests in the Debtors, free and clear of any lien,

claim or interest of any creditor provided for by the Plan upon discharge of the Debtors. All liens

which are not specifically granted in this Plan, shall be deemed void upon issuance of a discharge

for Debtors pursuant to Title 11 U.S.C. §506 and 1228.

2. <u>Executory Contracts</u>. Except as set forth below, all executory contracts or unexpired leases

not previously rejected or assumed, whether oral or written, shall be deemed to be assumed on the

date of confirmation. Any claim arising from the rejection of an executory contract or unexpired

lease prior to confirmation of this Plan shall be treated as an unsecured claim. No such claim shall

be entitled to payment under the provisions of this Plan, unless filed within 30 days.

3. <u>Payments to and by Trustee</u>. All payments to creditors pursuant to Debtors' Plan shall be

remitted to the Chapter 12 Standing Trustee for disbursement to creditors. If the Debtors make any

such payment directly to a creditor, the Trustee shall be entitled to compensation according to the

statutory percentage in effect on the date of the payment. Debtors' payments shall be made in cash,

cashier's check, or certified check. If Debtors' payments are made by any other means, the Trustee

may withhold payments to creditors for a sufficient period of time to allow the Trustee to negotiate

and collect the funds paid by the Debtors. Unless Debtors designate the intended recipient of any

payment to the Trustee, the Trustee may in his discretion apply payments (net of the Trustee's

statutory fee) to the oldest outstanding payment due to any allowed claim under the Plan. If the

Debtors make a partial payment to the Trustee, the Trustee may apply the partial payment (net of the

Trustee's statutory fee) to any such creditor.

4. <u>Failure to Make Payments</u>. If any Plan payment to the Trustee is not delivered to the

Trustee on its due date, this case will be dismissed, unless the Debtors convert this case to a Chapter

7 proceeding, request a hearing on dismissal or notify the Trustee of a need for extension of time.

Upon notice from the Debtors, the Trustee may extend the payment due date for a period not to

exceed ten (10) days. This provision will not prejudice the right of the Debtors to file for "good

cause" a motion to modify their Plan, and should such a motion be filed, the automatic stay shall stay in effect as to creditors affected by said modification while consideration of the motion is pending.

5. <u>Operation of Business</u>. Except as otherwise provided in this Plan, Debtors shall be entitled to manage their business and personal affairs without further order of the Court.

6. <u>Prepayment</u>. Any claim provided for in this Plan may be prepaid at any time without penalty.

7. <u>Sale of Farm Products</u>. Subsequent to confirmation of this Plan, Debtors may sell crops in the ordinary course of business without approval by the Trustee, the Court or any creditor. Debtors may use such proceeds for the maintenance and support of themselves and their dependents, for payment of expenditures necessary for the continuation, preservation, and operation of the Debtors' business, and payments due under the confirmed Plan of reorganization.

8. <u>Post-Petition Debt</u>. Debtors may incur post-petition debt in the ordinary course of their business and may pledge as security for such debt any assets except to the extent encumbered under the Plan.

9. <u>Submission of Income</u>. Debtors' income during the term of the Plan is submitted to the control of the Standing Trustee to the extent necessary for execution of the Plan, subject to Debtors' right of dismissal or conversion under Title 11 U.S.C. §1208.

10. <u>Discharge</u>. Upon completion by the Debtors of all payments required to be made during the term of this Plan, the Debtors shall receive a discharge of all debts provided for by the Plan, except as provided in Title 11 U.S.C. §1228(a).

11. <u>Quarterly Operating Reports</u>. On or before the 15th day following the close of each calendar quarter during the term of this Plan, Debtors shall file with Clerk of the United States Bankruptcy Court for the Western District of Oklahoma quarterly income and expense statements

accounting for all receipts and expenditures on the form prescribed by the Trustee. Trustee shall be provided a copy of the same. A copy of the federal and applicable state tax return for each taxable year that the Debtors are under the supervision of the trustee shall be submitted to the Trustee within 30 days of their filing.

12. Modification of Promissory Notes and Security Agreements. The promissory notes and security agreements previously executed by Debtors are hereby modified as to the principal amount due to the amount of the Allowed Secured Claim which relates thereto, and are further modified to the term and interest rate as set forth herein. Each debt obligation created in this Plan shall be secured only by the lien stated in the Plan. Unless otherwise stated, no debt obligation shall be cross-collateralized.

The filing of a certified copy of this Plan and certified copy of the Court's order confirming Plan in the office of the county clerk where the real property is located shall suffice to modify the mortgages affected hereby. The filing of a certified copy of this Plan and certified copy of the Court's order confirming Plan in such places as required by the Uniform Commercial Code, and other applicable state law, shall suffice to the modify the security agreements and financing statements effecting personality liens which are have been restructured under this Plan, Debtors shall have the right to prepay any allowed claims without penalty.

13. Curing of Defaults. This Plan shall operate to cure any default on any long-term debt notwithstanding that such claim has been accelerated by the claim holder.

14. Avoiding and Release of Liens. All non-possessory, non-purchase money security in any implements or tools of the trade of the Debtors which have been determined to be exempt pursuant to Title 11 U.S.C.§522 are deemed avoided by confirmation of the Plan and shall be released by the holder on request (oral or written) by Debtors. Upon discharge of Debtors, all pre-petition liens and

security interests which are not retained in the confirmed Plan shall be released by the holder on request (oral or written) by the Debtors.

15. Participation in Federal Farm Programs. If Debtors are a party to pre-petition, executory Production Flexibility Contract(s) and/or conservation Reserve Program Contract(s) with the Commodity Credit Corporation (CCC) the confirmation of the Debtors' Plan shall constitute Court approval of and authorization for the Debtor's assumption of such contracts. Confirmation of the Debtor's Plan shall also constitute Court permission and authorization for the Debtor(s) to enroll and participate in federal farm program administrative the United States Department of Agriculture (USDA) or any agency thereof.

Nothing contained in this Plan shall impair the policies, procedure, regulation and contract provisions established by the USDA, the Farm Service Agency (FSA), and/or the CCC with regard to the Federal Farm Program benefits, including, but not limited to, determining eligibility for program participation and for program benefits and collecting post-petition claims of the United States Government by offset.

Debtors may place any of their post-petition crops in the Federal Price Support Loan Program without further order of this Court and upon compliance with the requirement of the Program, all Federal Farm Program benefits that FSA has determined to be payable to Debtors may be disbursed by the FSA in the ordinary course of business in accordance with the program regulations and without further order of this Court.

16. Preparation of Tax Returns. The Debtors shall prepare and file all state, local, and federal tax returns required for the Debtors' estate.

17. Determination of Disposable Income. The Debtors may by motion seek a determination by the Court as to the amount of their disposable income during the term of the Plan.

18. <u>Mineral Leases</u>. Debtors retain the right to lease property of the estate for exploration of minerals, to make election enforced pooling proceedings pending with the Oklahoma Corporation Commission, and to settle and/or prosecute oil and gas exploration surface damage disputes without court approval; provided, however, Debtor's right as stated herein shall be subject to any limitations, restrictions, payment requirements, or prior rights of creditors as existed prior to commence of this case.

19. <u>Retention of Jurisdiction</u>. Until all claims have been allowed and all disputes have been resolved, the Court will retain jurisdiction for, including but not limited to, the following purposes:

(a) The classification of the claim of any creditor and the determination of such objection as may be filed to claims.

(b) Determination of all questions and disputes regarding title, security interest in and liens against any assets, and determination of all causes of action, controversies, disputes, and conflicts, whether or not subject to any action pending confirmation between Debtors and any other party, including but not limited to, any right of the Debtors to recover assets and money, pursuant to the provisions of Title 11 of the United States Code.

(c) The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the confirmation as may be necessary to carry out the purpose of this Plan.

(d) The modification of this Plan after Confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

(e) An action to enforce and interpret the terms and conditions of this Plan.

(f) Entry of any order, including injunction, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such titles, rights and powers as this Court may deem necessary.

(g) Entry of any order concluding and terminating this case.

20. <u>Payment of Personal Property and Real Estate Taxes</u>. Debtors will keep all personal property and real estate taxes paid current. Failure to do so may result in dismissal of the case.

DATED this 21st day of October, 2020.

*S/Clifton D. Randall*
    Clifton D. Randall

*S/Mary A. Randall*
    Mary A. Randall

☐    Pro se Debtor
■    Represented by Counsel

*S/Gary L. Morrissey*
Gary L. Morrissey, OBA #6438
1725 Linwood Boulevard
Oklahoma City, Oklahoma 73106
g.morrissey@yahoo.com
(405) 272-1500
Fax (405) 272-3090
Attorney for Debtors

## List of Vehicles/Equipment Retained

| Property Description | Mileage/Condition | Value |
|---|---|---|
| 2015 Ford F-250 truck | 80,000 miles | $15,000.00 |
| 1999 Ford F-250 truck | 600,000 miles | $4,500.00 |
| 1972 International 20' wheat truck | | $2,500.00 |
| 1978 Ford one ton flat bed truck | wrecked | $200.00 |
| 1967 Ford F-600 grain truck | no brakes | $1,500.00 |
| 1992 John Deere combine | high hours | $7,500.00 |
| 5103 John Deere tractor with loader | | $6,500.00 |
| 8530 grain drill | | $150.00 |
| Brilliant packer | | $350.00 |
| John Deere 13' shank ripper | three point frame broken | $300.00 |
| Krause 12' chisel | | $150.00 |
| John Deere 650 32' offset disc | needs disc & axles | $4,000.00 |
| Krause 14' disc | | $150.00 |
| Versatile sprayer 66' | wings broken | $150.00 |
| Sooner Gooseneck 20' trailer | | $700.00 |
| 16' stock trailer | floor out | $200.00 |
| Fuel trailer | bent axle | $200.00 |
| 1998 850 dozer | weak hydraulics | $7,500.00 |
| West 41' field auger | | $350.00 |
| John Deere 4700 tractor | high hours & leaks axle oil | $8,500.00 |
| 1974 John Deere 4430 tractor | transmission out | $3,000.00 |
| 1963 4 PTO 148 loader | bad motor | $2,000.00 |
| Kent 32' springtooth | | $100.00 |
| 567 round baler | | $2,500.00 |
| Total value vehicles/equipment retained | | 68000 |

**Exhibit A**

13

**Debtor's Projection of Income and Expenses**

| Line # | Description | 2021 | 2022 | 2023 |
|---|---|---|---|---|
| 1 | Gross Income (sale of projected wheat crop from 875 acres, 25 bushels per acre, total of 21,875 bushels at $4.00 per bushel, current market price is $4.36 per bushel) | $87,500.00 | $87,500.00 | $87,500.00 |
| 2 | Expenses: Land rent | $10,460.00 | $10,460.00 | $10,460.00 |
| 3 | Fertilizer/chemicals | $25,000.00 | $25,000.00 | $25,000.00 |
| 4 | Repairs | $4,000.00 | $4,000.00 | $4,000.00 |
| 5 | Insurance | $6,000.00 | $6,000.00 | $6,000.00 |
| 6 | Income & real estate taxes | $3,000.00 | $3,000.00 | $3,000.00 |
| 7 | Legal and accounting services | $4,500.00 | $4,500.00 | $4,500.00 |
| 8 | Fuel | $4,000.00 | $4,000.00 | $4,000.00 |
| 9 | Total expenses from farming operation | 56960 | $56,960.00 | $56,960.00 |
| 10 | Projected Cash Available to fund plan | $30,540.00 | $30,540.00 | $30,540.00 |
| 11 | Wife's annual **net** income | $35,400.00 | $35,400.00 | $35,400.00 |
| 12 | Husband's social security income | $15,528.00 | $15,528.00 | $15.528.00 |
| 13 | Total income, all sources (lines 10, 11, 12) | $81,468.00 | $81,468.00 | $81,468.00 |
| 14 | Class 1 Annual Plan Payment | $3,814.20 | $3,814.20 | $3,814.20 |
| 15 | Class 2 A Annual Plan Payment | $8,806.35 | $8,806.35 | $8,806.35 |
| 16 | Class 2 B Annual Plan Payment | $9,507.45 | $9,507.45 | $9,507.45 |
| 17 | Total Annual Plan Payments | 22128 | $21,128.00 | $21,128.00 |
| 18 | Net Annual Income | $59,340.00 | $59,340.00 | $59,340.00 |
| 19 | Debtors' Annual Personal Living Expenses (Per Schedule J) | $56,160.00 | $56,160.00 | $56,160.00 |
| 20 | Projected Annual Disposable Income | $3,180.00 | $3,180.00 | $3,180.00 |

**Exhibit B**

14

**Payments to Trustee by Debtors**

| Date | Plan Payment-secured debt | Disposable Income | Total payment |
|---|---|---|---|
| December 1, 2021 | $21,847.13 | $3,180.00 (est.) | $25,027.13 |
| December 1, 2022 | $21,847.13 | $3,180.00 (est.) | $25,027.13 |
| December 1, 2023 | $21,847.13 | $3,180.00 (est.) | $25,027.13 |

**Exhibit C**

## NOTICE OF HEARIING

     **You are hereby notified that the hearing for confirmation of this Chapter 12 Plan will be held before the Honorable Judge Janice Loyd at the following location and time:**

**Date:**       **December 2, 2020**

**Time:**       **10:00 a.m.**

**Location:**    **Second Floor Courtroom**
             **US Bankruptcy Courthouse**
             **215 Dean A. McGee**
             **Oklahoma City, OK 73102**

## NOTICE OF OPPORTUNITY FOR HEARING

     **Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than 21 days from the date of filing of this Plan. You should also serve a file stamped copy of your response or objection to the undersigned Debtors' attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.

     **The 21 day period includes the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f).**

<u>Certificate of Service</u>

I hereby certify that on this 21st day of October, 2020, a true and correct copy of the above Chapter 12 plan was served by the ECF system of Clerk of this Court to: Lonnie Eck, Esq., peck@eckchapter13.com, chapter 12 trustee; United States Trustee, Ustpregion20.oc.ecf@usdoj.gov; and mailed first class U.S. Mail, postage prepaid to the creditors listed on Exhibit A below.

*S/Gary L. Morrissey*
Gary L. Morrissey

| | | |
|---|---|---|
| BancFirst<br>200 N Main Street<br>Frederick OK 73542-0000 | Bank of America<br>P O Box 982238<br>El Paso TX 79998-2235 | Capital One NA<br>P O Box 30281<br>Salt Lake City UT 84130-0281 |
| Care Credit<br>Synchrony Financial<br>P O Box 965035<br>Dayton FL 32893-5035 | Chase<br>P O  Box 94014<br>Palatine IL 60094-4014 | Citicards CBNA<br>P O Box 790034<br>Attn Bankruptcy<br>Saint Louis MO 63179-0000 |
| Comenity Capital Bank/Ulta<br>P O Box 659820<br>San Antonio TX 78265-9120 | Discover Financial Services<br>P O Box 15316<br>Wilmington DE 19850-0000 | JCPMB Card Services<br>P O Box 15369<br>Wilmington DE 19850-0000 |
| John Deere Financial<br>P O Box 5328<br>Madison WI 53703-0328 | Kohls/Capital One<br>P O Box 3120<br>Milwaukee WI 53201-0000 | Office Max<br>P O Box 9025<br>Des Moines IA 50368-9025 |
| Pay Pal<br>P O Box 960080<br>Orlando FL 32896-0080 | Sears Bankruptcy Recovery<br>Management Services Inc<br>P O  Box 3671<br>Urbandale IA 50322-0674 | SYNC/Lowes<br>P O Box 965005<br>Orlando FL 32896-0000 |
| SYNC/Sams Club<br>P O Box 965005<br>Orlando FL 32896-0000 | US Bank<br>P O Box 6310<br>Fargo ND 58125-0000 | USAA Master Card/Visa<br>USAA Building<br>San Antonio TX 78288-0001 |
| Wells Fargo Card Services<br>P O Box 29486<br>Phoenix AZ 85038-9486 | Zulily Credit Card<br>P O Box 530993<br>Atlanta GA 30353-0993 | |

**Exhibit A**